UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID MCCANN,<br><br>    Plaintiff,<br><br>v.<br><br>LOWE'S COMPANIES, INC.<br><br>    Defendant. | Case No.:  2:22-cv-1180 |

# COMPLAINT

Plaintiff David McCann ("Plaintiff") brings this Complaint against Lowe's Companies, Inc. doing business as Lowe's ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and its implementing regulations (the "ADA"), for declaratory and injunctive relief, attorneys' fees, expenses, and costs pursuant to 42 U.S.C. §§ 12181 *et seq.*, and nominal damages.

# INTRODUCTION

1. Defendant follows stocking practices that cause the placement of obstructions including but not limited to merchandise displays, including flowers, plants and other items in the garden area, racks, tables, boxes, and/or other items so that they block or narrow the aisle pathways of its stores.

2. For some retailers, this practice is driven by a calculated judgment that impeding paths of travel increases sales revenue and profits. *See, e.g., Stuff Piled in the Aisle? It's there to*

1

*Get You to Spend More*, The New York Times (April 7, 2011)[1]; *see also, Why a Messy, Cluttered Store is Good For Business*, Time Magazine (April 8, 2011).[2]

3. Although this practice may increase profits in some instances, it does so at the expense of basic civil rights guaranteed to people with disabilities by the ADA because it results in unlawful barriers that impede access to goods and services for those individuals

4. Plaintiff, at all times relevant hereto, has suffered from a legal mobility disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a member of the protected class under the ADA, and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

5. Plaintiff has regularly visited Defendant's stores and has been repeatedly denied full and equal access to the stores as a result of accessibility barriers existing in paths of travel. These access barriers include but are not limited to: merchandise displays, racks, boxes, signs, and/or other items, positioned so that they impermissibly block or narrow the aisle pathways. These conditions violate the ADA and deny Plaintiff's equal access to the goods and services offered at Defendant's stores.

6. The access barriers described herein are not temporary and isolated. They are systemic, recurring, and reflective of Defendant's policies and practices. Plaintiff has encountered the same barriers on multiple occasions and has been repeatedly deterred from accessing Defendant's goods and services as a result.

---

[1] Available at https://www.nytimes.com/2011/04/08/business/08clutter.html as of August 16, 2022.

[2] Available at https://business.time.com/2011/04/08/why-a-messy-cluttered-store-is-good-for-business/ as of August 16, 2022.

7. Counsel for Plaintiff has overseen an investigation into a sample of Defendant's stores which has confirmed the widespread existence of access barriers that are the same as, or similar to, the barriers directly experienced by Plaintiff at the Monroeville store.

8. Unless Defendant is required to remove the access barriers described herein, and required to change its policies and practices so that these access barriers do not reoccur at Defendant's stores, Plaintiff will continue to be denied full and equal access to the stores and will be deterred from fully using Defendant's stores.

9. In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a. Defendant remediate barriers in paths of travel in its stores, consistent with the ADA;

   b. Defendant change its policies and practices so that access barriers in paths of travel at its stores do not reoccur; and

   c. Plaintiff's representatives shall monitor Defendant's stores to ensure that the injunctive relief ordered pursuant to this Complaint has been implemented and will remain in place.

## THE ADA'S CLEAR AND COMPREHENSIVE MANDATE

10. The ADA was enacted over a quarter-century ago and was intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

11. The ADA is the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. Like other civil rights laws, the purpose of the ADA is clear: the eradication of discrimination. As one legal scholar explained: "A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can

exclude a class of people." Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

12. The Supplementary Information to 28 C.F.R. § 36 explains, among other things: "Some of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities."

13. Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). It prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in the goods or services offered by a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

14. Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); or from affording goods, services, facilities, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); or from

providing goods, services, facilities, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)).

## THE ADA AND THE RIGHT OF NON-DISCRIMINATORY ACCESS TO GOODS

15. The ADA specifically prioritizes "measures to provide access to those areas where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables . . . ." 28 C.F.R. § 36.304.

16. The ADA and its implementing regulations define prohibited discrimination to include the following: (a) the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv); (b) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1); (c) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and (d) the failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

17. To be "readily accessible" under Title III of the ADA, merchandise on fixed aisle shelving in a retail store such as Lowe's must be located on an accessible route. The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical structural requirements that a public accommodation must meet in order to be "readily

accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. C ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

18. The applicable "accessible route" standards are set forth in the 2010 Standards at Section 403.5.1. *See also* ADA Guide for Small Businesses (June 1999), available at https://www.ada.gov/smbustxt.htm (noting that "when sales items are displayed or stored on shelves for selection by customers, the store must provide an accessible route to fixed shelves and displays, if doing so is readily achievable."). ADA Figure 403.5.1 explains that an accessible route must be a minimum of 36 inches, but can be reduced to 32 inches for a length of no more than 24 inches, such as at doors, so long as the 32 inch segments are at least 48 inches apart. *See* ADA Figure 403.5.1, available at https://www.access-board.gov/aba/chapter/ch04/.

19. The "accessible route" standards set forth in the 1991 Standards have a similar requirement of 36 inches, which can be reduced to 32 inches for no more than 24 inches. *See* ADA Figure 1, available at https://www.access-board.gov/adaag-1991-2002.html.

20. The ADA requires places of public accommodations to design and construct facilities to be independently usable by individuals with disabilities. 42 U.S.C. § 12183(a)(1).

21. The ADA further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of disability. 42 U.S.C. § 12182(b)(1)(D).

22. The ADA further requires Defendant to provide individuals who use wheelchairs, scooters, or other mobility devices full and equal enjoyment of its facilities. 42 U.S.C. § 12182(a).

23. When discriminatory architectural conditions exist within a public accommodation's facility, the ADA directs that a "public accommodation shall remove architectural barriers in existing facilities . . . where such removal is readily achievable, *i.e.*, easily

accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(b) (emphasis added); *see also* 42 U.S.C. § 12182(b)(2)(A)(iv) (the failure to remove architectural barriers, where such removal is readily achievable, constitutes discrimination).

24. The obligation to remove access barriers applies equally to non-fixed obstructions, such as boxes and display racks, and the Department of Justice has specifically and repeatedly emphasized this obligation to public accommodations in ADA guidance documents:

> A common problem observed by the Department is that covered facilities do not maintain accessible routes. For example, the accessible routes in offices or stores are commonly obstructed by boxes, potted plants, display racks, or other items so that the routes are inaccessible to people who use wheelchairs. Under the ADA, the accessible route must be maintained and, therefore, these items are required to be removed.

Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 73 Fed. Reg. 34508-01, 34523 (June 17, 2008).

25. In addition to tangible barrier removal requirements as well as physical design, construction, and alteration requirements, the ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

26. The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. § 12188(a)(1).

27. The access barriers described herein demonstrate that Defendant's facilities are not altered, designed, and/or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs, scooters, or other mobility devices and/or that

Defendant's facilities are not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs, scooters, or other mobility devices.

28. Defendant's practices herein described constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

## JURISDICTION AND VENUE

29. This court has federal jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

30. Plaintiff's claims asserted herein arose in this judicial district, and Defendant does substantial business in this judicial district.

31. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

32. Plaintiff David McCann is, and at all times relevant hereto was, a resident of Plum, Allegheny County, Pennsylvania.

33. Plaintiff has a spinal cord injury and uses a wheelchair for mobility. He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

34. Defendant The Lowe's Companies, Inc. is a North Carolina corporation with a principal place of business at 1000 Lowes Boulevard, Mooresville, North Carolina, 28117.

35. Defendant's stores are places of public accommodation pursuant to 42 U.S.C. § 12181(7).

**FACTUAL ALLEGATIONS AND PLAINTIFF'S EXPERIENCE**

I. **Plaintiff has been denied Full and Equal Access to Defendant's Facilities.**

36. Plaintiff resides in Plum, Pennsylvania approximately five miles from Defendant's facility located at 4200 William Penn Highway, Monroeville, PA 15146 (the "Monroeville Store"). It is approximately a fifteen-minute drive from Plaintiff's residence to Defendant's Monroeville Store.

37. Plaintiff has repeatedly shopped at Defendant's Monroeville Store, including as recently as the summer of 2022. During his visits to the Monroeville Store, he has consistently encountered access barriers within and throughout the Store, including but not limited to merchandise displays, including flowers, plants and other items in the garden area, racks, boxes, signs, and other items, which have precluded Plaintiff's equal access to Defendant's goods and services in violation of the ADA's equal access mandate, generally, and the requirements of the 2010 Standards Section 403.5.1 and/or the 1991 Standards Section 4.2.1 and 4.3.3. Plaintiff would shop at Defendant's Monroeville Store more often, and with less difficulty, if the interior access barriers are removed.

38. Given the access barriers contained within Defendant's stores, Plaintiff is deterred and continues to be deterred from returning to Defendant's stores.

39. In addition to examining the Monroeville Store, Plaintiff's Investigators visited additional Lowe's stores and determined that access barriers existed that were similar to those at the Monroeville Store

40. As a result of Defendant's non-compliance with the ADA, Plaintiff's rights to full and equal, non-discriminatory, and safe access to Defendant's goods and facilities have been denied.

41. Plaintiff has been and will be deterred from returning to and fully and safely accessing Defendant's facilities so long as Defendant's facilities remain non-compliant, and so long as Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendant's facilities.

42. Nonetheless, Plaintiff has visited and will continue to visit Defendant's stores, both in an attempt to access goods and services in those stores and to survey the stores for compliance with the ADA.

43. Without injunctive relief, Plaintiff will continue to be unable to fully and safely access Defendant's facilities in violation of his rights under the ADA.

44. As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendant's facilities, have access barriers that impede full accessibility.

## II. Defendant Denies Individuals with Mobility Disabilities Full and Equal Access to Its Facilities

45. Defendant is engaged in the ownership, management, operation, and development of retail stores throughout the United States that sell a variety of home improvement products.

46. As the owner, operator, and/or manager of its properties, Defendant employs centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of its facilities.

47. However, as set forth herein, these policies, practices, and procedures are inadequate in that Defendant's facilities are operated and maintained in violation of the accessibility requirements of Title III of the ADA.

48. As evidenced by the widespread inaccessibility of Defendant's stores visited by Plaintiff and Plaintiff's Investigators, absent a change in Defendant's corporate policies and

practices, access barriers are likely to reoccur in Defendant's facilities even after they have been remediated in the first instance.

49. Accordingly, Plaintiff seeks an injunction to remove the barriers currently present at Defendant's facilities and an injunction to modify the policies and practices that have created or allowed, and will create or allow, access barriers in Defendant's stores.

## CAUSE OF ACTION: VIOLATION OF THE ADA

50. Defendant has failed, and continues to fail, to provide individuals who use wheelchairs, scooters, or other mobility devices with full and equal enjoyment of its facilities.

51. Defendant has discriminated against Plaintiff in that Defendant has failed to make Defendant's facilities fully accessible to, and independently usable by, individuals who use wheelchairs, scooters, or other mobility devices in violation of 42 U.S.C. § 12182(a) as described above; Section 403.5.1 of the 2010 Standards and/or Sections 4.2.1 and 4.3.3 of the 1991 Standards.

52. Defendant's conduct is ongoing and continuous, and Plaintiff has been harmed by Defendant's conduct.

53. Unless Defendant is restrained from continuing its ongoing and continuous course of conduct, Defendant will continue to violate the ADA and will continue to inflict injury upon Plaintiff.

54. Given that Defendant has not complied with the ADA's requirements to make Defendant's facilities fully accessible to, and independently usable by, individuals who use wheelchairs, scooters, or other mobility devices, Plaintiff invokes his statutory rights to declaratory and injunctive relief, and costs and attorneys' fees, as well as nominal damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for:

a. A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA, and the relevant implementing regulations of the ADA, in that Defendant's facilities are not fully accessible to and independently usable by individuals who use wheelchairs, scooters, or other mobility devices;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that: (i) directs Defendant to take all steps necessary to remove the access barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs, scooters, or other mobility devices; (ii) directs Defendant to change its policies and practices to prevent the reoccurrence of access barriers post-remediation; and (iii) directs that Plaintiff shall monitor Defendant's facilities to ensure that the injunctive relief ordered above remains in place;

c. Payment of the costs of suit;

d. Payment of nominal damages, as permitted by the Supreme Court in *Uzuegbunam v. Preczewski*, 141 S.Ct, 792, 799-802 (2021) ("They [nominal damages] are instead the damages awarded by default until the plaintiff establishes entitlement to some other form of damages, such as compensatory or statutory.");

e. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f. The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: August 16, 2022

Respectfully submitted,

*/s/ R. Bruce Carlson*
R. Bruce Carlson
Ian M. Brown
**CARLSON BROWN**
222 Broad St.
PO Box 242
Sewickley, PA 15143
bcarlson@carlsonbrownlaw.com
ibrown@carlsonbrownlaw.com
724-730-1753

        Nicholas A. Colella
        James M. LaMarca
        **LYNCH CARPENTER, LLP**
        1133 Penn Avenue, 5th Floor
        Pittsburgh, PA 15222
        Phone: (412) 322.9243
        nickc@lcllp.com
        james@lcllp.com

        *Counsel for Plaintiff*